COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| VICTOR URRUTIA, | § | |
| | | No. 08-18-00035-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | County Criminal Court Number One |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 20160C10391) |
| | § | |

## **O P I N I O N**

A jury convicted Victor Urrutia on two counts of criminal deceptive trade practices, both of which arose from a vehicle purchase and repair gone wrong. His appeal raises four issues: (1) whether the trial court erred in admitting evidence of Appellant's "bad" reputation for truthfulness; (2) whether he was entitled to introduce a demand letter from a parallel civil proceeding to show the complaining witness's bias; (3) whether text messages were properly authenticated; and (4) whether the trial court erred in *sua sponte* providing a jury instruction after the parties finished their closing remarks.

We conclude that his complaints lack sufficient merit to require reversal and affirm the judgment below.

## **BACKGROUND**

This case arose out of a somewhat complicated purchase of a BMW automobile. The

complaining witness, Zain Almarayati (Zain), worked as a linguist for the Army. Appellant operated a used car dealership known as Continental Auto Sales (Continental). Zain first met Appellant in the summer of 2011 when Zain purchased, without incident, a black 328i BMW from Continental.[1] Zain returned to Appellant's dealership in July 2013 to trade-in that BMW for another. As a result of that transaction, Zain believed that in October 2013 he had purchased a red 2011 328i BMW from Continental. And although Zain took possession of that car, he claimed that Appellant would not deliver clear title until Zain paid an additional $1,200 governmental fee. Zain's own research led him to believe there was no such government fee owed, so he declined to pay it.

To resolve that conflict, Zain and Appellant entered into the transaction that is the basis of this case. Under their oral arrangement, Continental would sell on consignment the 2011 328i BMW. It would then either apply the proceeds of that sale towards the purchase of another vehicle or return the money. In actuality, the transaction worked this way. On February 23, 2015, Appellant sent Zain a text stating that he found a buyer for the 2011 328i BWM for $22,500. The text stated Continental would take a $500 commission on that sale, another $500 commission on the purchase of the next vehicle, and asked for a $5,000 down payment, which would leave Zain with a $26,500 credit balance for the replacement vehicle. Zain agreed to arrangement that same day. Unbeknownst to Zain, the buyer was Sergio Quevedo who was the owner of the real property upon which Continental sat, and Appellant's business associate.[2]

---

[1] On the side, Zain also worked as a car salesman for a local BMW dealership. The record does not explain why he bought his BMWs through Continental, rather than his employer's dealership.

[2] The record is unclear as to Sergio Quevedo's exact connection to Appellant. Quevedo testified that he and Appellant's wife own a tract of land that is leased to Continental and another person, Rodolfo Bernal, who runs a repair facility. Quevedo also testified that he entered into a business relationship with Appellant with the idea that they could sell, repair, and insure cars (Quevedo was an insurance agent). Their relationship eventually soured, and Quevedo filed what was described as a partition lawsuit. Our record lacks any partnership agreement or other document describing the actual legal relationship between the two, so we use the term "business associate" somewhat

2

After the sale of the 2011 328i BMW, the search for the replacement vehicle dragged on. In June 2015, Zain asked for all his money back, but accepted a partial payment of $8,300, leaving a credit balance of $18,200. By July 2015, Zain and Appellant found a damaged 2015 640i BMW through an on-line auction website. Zain did not inspect the vehicle before the auction (it was in California), but a photo showed some front-end damage. Appellant made bids on the vehicle through Continental. According to another text message introduced at trial, Appellant claimed they prevailed with the high bid at $28,350. The vehicle was delivered to Continental's dealership on July 17, 2015.

Zain understood that Continental needed to pay-off the auction site within thirty days. Continental did not, however, fund the transaction. To partially make up for that default, Appellant agreed to sell Zain an older Toyota Corolla at cost ($975) so he would have a vehicle to drive in the interim. Zain also began making additional payments to Continental towards the purchase of the 2015 640i BMW ($1,500 October 9, $8,000 on October 14, $2000 on November 16). When he pressed Appellant for transfer of the title, Zain claims Appellant offered "[e]very single excuse in the book[.]" Finally in March 2016, Appellant told Zain that he needed to pay an additional $5,500 because of the delay in paying the auction site. Appellant needed Zain to advance the funds because Continental did not have the money to complete the transaction. Appellant claimed he would repay the advance when his other car sales picked up. Zain claims he made the additional payment because he was "stuck between a rock and a hard place."

In April 2016, Appellant provided Zain a written bill of sale. It showed a sales price of $29,950 ($1,600 more than the winning bid), a credit on the prior sale of $21,000 ($1,000 less than what was represented), but in total showed a zero-balance due. Zain did not take immediate

loosely.

3

possession of the car. Instead, it was left with Appellant who was establishing a body shop behind the car dealership. According to Zain, Appellant agreed to fix the car to make up for the overpayment of the original purchase price.

Zain began making frequent visits to shop to check on the progress of repairs. He noticed that parts were being removed from the vehicle. He was particularly concerned when he saw that the wheels from his 2015 640i BMW were mounted on the 2011 328i BMW that he had sold back in 2015. When he confronted Appellant about the wheels, he was told the new owner just wanted to see if they were compatible, and his wheels were then put back on his car. On a later visit, however, Zain noticed same thing--his original wheels had been switched again, and additional cooling and mechanical parts were taken out of his car. This time, the 2011 328i BMW was no longer on the premises. He soon learned that Sergio Quevedo, who he understood was Appellant's business partner, now owned the 2011 328i BMW, and had also bought Zain's wheels from Appellant for $2,000.

At that point Zain called the police to assist in taking possession of his 2015 640i BMW. Appellant, however, told a responding police detective that he would not release the vehicle until Zain paid a $5,700 storage fee. The jury learned that Appellant's BMW was parked in the rear of the property, and in a portion of the lot that was being leased to Rodolfo Bernal who ran his own body shop. Bernal testified he was not charging any storage fee for the BMW. Bernal also recalled that Appellant for a time parked a vehicle in front of the BMW to block it in so Zain could not take it until they reached an "agreement."

After the police became involved, Sergio Quevedo first offered to give the wheels back to Zain if he was repaid their $2,000 purchase price, and later offered to just return them, but Zain refused. As of the time of trial, Zain had filed a civil lawsuit against Appellant, but had never

4

gained possession of the vehicle.

The jury charge tracked the State's two count information. The first count asked whether Appellant intentionally, knowingly, or recklessly committed a deceptive business practice by selling a 2015 BMW 640i to Zain, and then failed to deliver that vehicle. The second count asked the same question, but with reference to repair services on the vehicle. The jury returned a guilty verdict on both counts. The trial court assessed a one-year suspended sentence (but with twenty days of jail time as a condition of probation), community service hours, restitution of $13,217.90 paid over time, and return of the vehicle to Zain.

Appellant brings four issues for our consideration. The first three relate to evidentiary rulings, and the last issue relates to a statement by the trial judge to the jury.

## EVIDENTIARY ISSUES

In his first three issues, Appellant complains of the admission and exclusion of evidence. Issue One complains that the trial court erred in admitting opinion evidence that Appellant's reputation for truthfulness was "bad." Issue Two complains that the trial court erred in excluding a demand letter that Zain personally authored, and which stated that a successful criminal prosecution would expose Appellant to deportation. Finally, his third issue complains that the State failed to lay a proper predicate for the admission of several text messages. We start with our standard of review.

### Standard of Review

We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Taylor v. State*, 268 S.W.3d 571, 579 (Tex.Crim.App. 2008). We may not substitute our own decision for

that of the trial court. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App. 2003). Moreover, "[i]f the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment." *Page v. State*, 213 S.W.3d 332, 337 (Tex.Crim.App. 2006), *quoting Sauceda v. State*, 129 S.W.3d 116, 120 (Tex.Crim.App. 2004).

Even if the admission or exclusion of evidence was erroneous, we still must assess harm. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex.Crim.App. 2018). Evidentiary errors *generally* constitute non-constitutional error which we review under TEX.R.APP.P. 44.2(b). *Gonzalez*, 544 S.W.3d at 373; *Walters v. State*, 247 S.W.3d 204, 219 (Tex.Crim.App. 2007). An appellate court must disregard a non-constitutional error that does not affect a criminal defendant's "substantial rights." TEX.R.APP.P. 44.2(b); *Casey v. State*, 215 S.W.3d 870, 884-85 (Tex.Crim.App. 2007). Under that rule, an appellate court may not reverse for non-constitutional error if the court, after examining the entire record, has a fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Casey*, 215 S.W.3d at 884-85. In doing so, we consider (1) the character of the alleged error and how it might be connected to other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the complained of error. *Gonzalez*, 544 S.W.3d at 373, *citing Motilla v. State*, 78 S.W.3d 352, 356-58 (Tex.Crim.App. 2002).

Appellant urged at trial that the exclusion of one of his exhibits rose to a constitutional dimension, effectively denying him the right to confront witnesses as guaranteed by the Sixth Amendment to the U.S. Constitution. The exclusion of evidence may rise to the level of a constitutional violation, but only if: (1) a state evidentiary rule categorically and arbitrarily

prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense; or (2) a trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense. *Walters*, 247 S.W.3d at 219.

## Opinion Testimony as to Character for Truthfulness

### *The Testimony at Issue*

As its second witness, the State called Rodolfo Bernal who ran the body shop located behind Appellant's dealership. Bernal rented space from Sergio Quevedo and Appellant's wife. He also did work for Appellant, including the repair of the 2015 640i BMW. Over objection, the State's attorney elicited this opinion from Bernal:

[PROSECUTOR]: Have you had an opportunity to hear persons in your community discuss the character of the defendant with regards to truthfulness?

[BERNAL]: Yes.

[PROSECUTOR]: Did those discussions of his character arise from circumstances other than a charge for which the defendant is on trial today?

[BERNAL]: Yes.

[PROSECUTOR]: Is the defendant's reputation for truthfulness good or bad?

[APPELLANT'S COUNSEL]: Once again, just for the appellate record, since [Appellant] hasn't testified, we say it's not right and respectfully object.

[THE COURT]: Overruled. Go ahead.

[PROSECUTOR]: Please answer.

[BERNAL]: What was the question?

[PROSECUTOR]: Is the defendant's reputation for truthfulness good or bad?

[BERNAL]: Bad.

The objection below focused on the fact that Appellant had not testified, and before he did, the State could not attack his credibility with a character opinion. Appellant additionally claimed that

7

the State could not admit some declaration of the accused, then try and knock it down with a character opinion. Stated otherwise, the State could not open its own door to the admission of this kind of testimony.

### *Applicable Law*

"In a criminal case, the general rule is that evidence of a person's character is not admissible to prove conforming conduct." *Harrison v. State*, 241 S.W.3d 23, 25 (Tex.Crim.App. 2007); TEX.R.EVID. 404(a)(1); *see also Childress v. State*, 241 S.W. 1029, 1033 (Tex.Crim.App. 1922)("There is no better known rule than that the reputation of the defendant cannot be inquired into by the state unless the accused himself opens up the way[.]"). The rules of evidence, however, provide some express exceptions. Rule 404(a)(2)(A) allows a defendant to bring his or her character into issue by introducing appropriate character or reputation evidence. TEX.R.EVID. 404(a)(2)(A). Once the defendant has done so, the State may offer rebuttal character evidence. *Id*. Rule 404(a)(4) also allows evidence of a "witness's character" to be admitted under Rules 607, 608, and 609. *Id*. Rule 608 in turn allows that "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." TEX.R.EVID. 608(a). Finally, Rule 806 provides that "[w]hen a hearsay statement . . . has been admitted in evidence, the declarant's credibility may be attacked . . . by any evidence that would be admissible for those purposes if the declarant had testified as a witness." TEX.R.EVID. 806.

### *Application*

Appellant relies on the general prohibition against character evidence of the accused and argues that neither the exceptions in Rules 404 or 608 could apply here. Appellant never testified at trial and could not be a "witness" for the purposes of Rule 608. Nor had he offered any evidence

8

of his opinion for truthfulness, and thus never triggered Rule 404(a)(2)(A).

The State responds on appeal that Rule 806 justifies the trial court's ruling. By the time Bernal testified, Appellant had introduced as Exhibit 11 a "Buyer[']s Guide" which is a form document that would accompany the sale of the 2015 640i BMW. It bears the "Continental Auto" logo. Preprinted boxes reflect that the vehicle was sold "As is- No Warranty" and as a "Reconditioned" vehicle. A handwritten notation states "Customer did the repairs Continental Auto just bought the car in Auction." The document purports to bear the signature of Zain, but he had expressly denied at trial that he signed the document. Zain found the document in the glove box of the 2015 640i BMW.

On appeal, the State contends that the entries on the form and handwritten statement denying the dealership made any repairs is attributable to Appellant (and was introduced by him at trial). As such, it constitutes a hearsay declaration which in turn permits the State to impeach Appellant's credibility under Rule 806. Appellant makes no reply to this argument, and we are constrained to agree with the State. Rule 806 permits a party to impeach the credibility of a non-testifying hearsay declarant. *Griffith v. State*, 983 S.W.2d 282, 290 (Tex.Crim.App. 1998)(impeachment by admission of declarant's prior conviction). Further, Rule 806 has been held to apply when the declarant is a non-testifying defendant. *See Schmidt v. State*, 373 S.W.3d 856, 861 (Tex.App.--Amarillo 2012, pet. ref'd); *Appling v. State*, 904 S.W.2d 912, 916 (Tex.App.--Corpus Christi 1995, pet. ref'd); *Theragood v. State*, No. 08-10-00013-CR, 2011 WL 3848840, at *5 (Tex.App.--El Paso Aug. 31, 2011, no pet.)(not designated for publication). The Buyer's Guide contains a hearsay statement about repair services--a subject directly at issue in the case. Appellant emphasized this portion of the exhibit, using it for the truth of the matter asserted. It also contained a disputed signature, suggesting either Zain had lied about signing the document,

or under the State's claim, Appellant had forged the signature. Under these facts, we find no abuse of discretion in allowing Bernal's opinion testimony. We accordingly overrule Issue One.[3]

## Exclusion of the Demand Letter

### *The Testimony at Issue*

The jury learned that Zain had filed a civil lawsuit against Appellant over the transaction. Appellant additionally sought to admit a demand letter that Zain authored himself, and which contained these concluding paragraphs:

> Criminal legal action has already been considered and should this matter not be resolved within 14 days any pending investigations intend to be initiated for arraignment in Court. [sic]

> If you are not a US Citizen, a criminal conviction from any of the offences [sic] that have been aforementioned can result in immediate deportation and the deportation of any persons sponsored by you. Should this happen you will never be allowed to return to the United States under any circumstances.

Appellant sought to admit the letter, and particularly the last paragraphs to attack Zain's bias and motive, and then to cross-examine Zain over it. Outside the presence of the jury, Zain testified that he immigrated to this country and is now a naturalized U.S. citizen. He testified that he included the last two paragraphs because Appellant had previously boasted that Zain would not be listened to in this country. Appellant claims the exclusion of the letter denied him the right to confront and cross-examine his accuser under the federal and state constitutions. The trial court denied admission of the demand letter.

### *Applicable Law*

A defendant generally has a broad right to impeach the credibility of a prosecution witness

---

[3] Had we decided otherwise, we would have to assess harm. Appellant's entire argument on harm is found in a single paragraph of his brief and substantively only states: "The case at bar was a credibility contest between Appellant's defense and complainant Zain Almayarti. The State's improper character evidence told the jury that the defense was untruthful, albeit Appellant did not testify." The State does not address harm at all. This manner of briefing would not assist the Court in applying the four-part harm analysis set out in cases like *Motilla v. State*, 78 S.W.3d 352, 358 (Tex.Crim.App. 2002).

10

based on matters that involve possible "ill feeling, bias, motive, interest, or animus" against a defendant. *Billodeau v. State*, 277 S.W.3d 34, 42-43 (Tex.Crim.App. 2009); *see also Carroll v. State*, 916 S.W.2d 494, 497 (Tex.Crim.App. 1996)(defendants are generally entitled to cross-examine a witness by inquiring into any area which is reasonably calculated to show a witness's motive, bias, or interest in testifying). "The constitutional right of confrontation includes the right to cross-examine the witnesses and the opportunity to show that a witness is biased or that his testimony is exaggerated or unbelievable." *Irby v. State*, 327 S.W.3d 138, 145 (Tex.Crim.App. 2010). Accordingly, the proper scope of cross-examination includes "all facts and circumstances which, when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of the cause only." *Koehler v. State*, 679 S.W.2d 6, 9 (Tex.Crim.App. 1984), *citing Jackson v. State*, 482 S.W.2d 864, 868 (Tex.Crim.App. 1972); *see also Johnson v. State*, 433 S.W.3d 546, 551 (Tex.Crim.App. 2014)("[I]t is not within a trial court's discretion to prohibit a defendant from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness[.]")(internal quotations omitted).

Nonetheless, a trial court retains broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex.Crim.App. 2000); *Carroll*, 916 S.W.2d at 498; *Walker v. State*, 300 S.W.3d 836, 845 (Tex.App.--Fort Worth 2009, pet. ref'd), *quoting Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)("[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."). "Each Confrontation Clause issue must be weighed on a case-by-case basis, carefully

taking into account the defendant's right to cross-examine and the risk factors associated with admission of the evidence." *Lopez*, 18 S.W.3d at 222. In determining whether evidence must be admitted under the Confrontation Clause, the court must balance the probative value of the evidence sought to be introduced against the risk its admission may entail. *Id.* A limitation on cross-examination does not violate the defendant's right to confront a witness so long as (1) the possible bias and motive of the State's witness is clear to the trier of fact; and (2) the accused has otherwise been afforded an opportunity for a thorough and effective cross-examination. *Ho v. State*, 171 S.W.3d 295, 304 (Tex.App.--Houston [14th Dist.] 2005, pet. ref'd). Moreover, "compliance with the reasonable construction and application of a rule of evidence will, in most instances, avoid a constitutional question." *Hammer v. State*, 296 S.W.3d 555, 561 (Tex.Crim.App. 2009).

There is also an important distinction between an attack on the general credibility of a witness and a more particular attack on credibility that reveals possible bias, prejudice, or ulterior motive of the witness. *Hammer*, 296 S.W.3d at 562. "[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316-17 (1974). However, as Justice Stewart noted in his *Davis* concurrence, the court neither held nor suggested that the constitution confers a right to impeach the general credibility of a witness through otherwise prohibited modes of cross examination. *Id.* at 321 (Stewart, J., concurring). Accordingly, the evidence or cross-examination at issue must be relevant to the matters of bias, prejudice, or ulterior motive, and not just generally attack the witness.

### *Application*

The trial court did not abuse its discretion in failing to admit the demand letter. The fact

that Zain was seeking financial recompense from Appellant was a possible motive for his testimony. But Appellant had already developed that motive through testimony of Zain's civil suit pending over the sale of the BMW. The fact of the demand letter as such would only be duplicative of that testimony. And the exclusion of cumulative evidence is generally not an abuse of discretion. *See Lopez*, 18 S.W.3d at 222; *Ho*, 171 S.W.3d at 304 (trial court did not err in excluding out-of-court confrontation between witnesses and defendant's family when the jury was already aware of animosity between the two); *Rohr v. State*, No. 08-12-00219-CR, 2014 WL 4438828, at *8 (Tex.App.--El Paso Sept. 10, 2014, no pet.)(not designated for publication)(claimed limitation on cross-examination not error when fact finder was "fully aware of Appellant's defensive theory").

Appellant focuses here, as he did below, on the final paragraph of the demand letter which arguably threatens Appellant with deportation. If the deportation threat was related only to Zain's desire to obtain a financial remedy, it is again cumulative of what the jury already knew. Another alternative is that it reflects a distinct motive of discrimination against immigrants. But the record contains no actual testimony about Appellant's immigration status, if any. All the record does show is that Zain was an immigrant. Finally, the last paragraph of the letter might show that Zain makes unsubstantiated threats, but even if true, that was not an issue in the case. The question is whether he made unsubstantiated allegations of fact about the sale and service of the automobile, not that he made idle threats over immigration matters.

No doubt, the statement that Zain made could be negatively perceived, particularly by a jury in a border community. But that in and of itself is little more than the injection of a collateral or prejudicial matter, or a general credibility attack. And as a general rule, a witness may not be contradicted or impeached as to immaterial or collateral matters. *Sanchez v. State*, No. 08-14-

13

00012-CR, 2016 WL 2586502, at *4 (Tex.App.--El Paso May 4, 2016, no pet.)(not designated for publication); *Sherman v. State*, No. 08–13–00105–CR, 2015 WL 1962815, at *3-4 (Tex.App.--El Paso April 30, 2015, pet. ref d)(not designated for publication). Nor do litigants have a right to make *general* credibility attacks that are not relevant to bias, motive, or animus of the witness. *See Hammer*, 296 S.W.3d at 562-63. Because we find no abuse of discretion in excluding the demand letter, we overrule Issue Two.

## Admission of the Text Messages

### *The Testimony at Issue*

The State admitted as Exhibit 3 a series of text messages that documented the sale of Zain's 2011 328i BMW. The texts appear in speech bubbles that reflect a conversation between two persons. The exhibit begins with a text reading "Friend i got a very interested customer, he ask me if you would take $22,500 for the BMW?" and after some back and forth, ends with a text from Zain that reads "Alright sounds good!!."

The State introduced the exhibit through Zain who testified that: (1) he recognized the exhibit; (2) it fairly and accurately represents what it depicts to be; (3) it has not been altered in any way; (4) the exhibit depicts the exchange of text messages between Zain and Appellant; (5) Zain has had previous communications with Appellant at the same telephone number; (6) that Zain had no reason to believe it wasn't Appellant he was conversing with on that day; and (7) the conversation was the same as any other day. The exhibit does not itself reflect the other telephone number. In compliance with the trial court's directive, however, Appellant supplied the phone number for the record.

### *Applicable Law*

"Evidence has no relevance if it is not authentically what its proponent claims it to be."

14

*Tienda v. State*, 358 S.W.3d 633, 638 (Tex.Crim.App. 2012). Accordingly, an exhibit must be authenticated to be admitted and "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." TEX.R.EVID. 901(a). Here, the jury would ultimately decide whether the exhibit is what the State says it was; the trial court "need only make the preliminary determination that the proponent of the item has supplied facts sufficient to support a reasonable jury determination that the proffered evidence is authentic." *Butler v. State*, 459 S.W.3d 595, 600 (Tex.Crim.App. 2015), *citing Tienda*, 358 S.W.3d at 638.

Telephone text messages can be authenticated "in myriad ways, depending upon the unique facts and circumstances of each case, including through the testimony of a witness with knowledge or through evidence showing distinctive characteristics." *Butler*, 459 S.W.3d at 601, *citing* TEX.R.EVID. 901(b)(1) and (4). A witness might know the authorship of a text message because: (1) they were the author; (2) they observed the message being typed; or (3) they might know the message came from a phone number associated with the purported sender. *Tienda*, 358 S.W.3d at 640. Aside from the phone the number itself, the message's "appearance, contents, substance, internal patterns, or other distinctive characteristics," might in conjunction with other circumstances tie the message to a particular author. *Butler*, 459 S.W.3d at 602, *quoting* TEX.R.EVID. 901(b)(1). The Court of Criminal Appeals has cautioned, however, that "evidence that merely shows the association of a phone number with a purported sender—*alone*—might be too tenuous." *Butler*, 459 S.W.3d at 601 ("We have advised caution in the event a trial court finds that this is the *only* fact underlying a witness's knowledge linking a text message to the purported author."). The court's concern is that the usual user of a phone might not be in possession of the phone at the actual time the message was sent. *Id.*

15

*Application*

The trial court here, however, had a sufficient basis upon which to make the preliminary determination that the text message chain was authenticated. In addition to identifying the number, Zain testified that he had previous communications with Appellant at the same telephone number and the conversation was consistent with other conversations he had had with Appellant at other times. The *Butler* court concluded that a text message was sufficiently authenticated because (1) the accused in that case had called the number on past occasions; (2) the content and context of the text messages were consistent with the accused, and (3) the accused actually called the complainant from that same phone number during the course of that very text message exchange. *Butler*, 459 S.W.3d at 603. The first two factors are present in this case, the last factor is not. But other information ties the message to Appellant. The text message pertains to a 2011 BMW that Appellant was selling on consignment for Zain. Quevedo testified that he indeed bought that vehicle from Appellant. The bill of sale for the 2015 BMW reflects a trade in credit that was close to the same as the sales price reflected in the text exchange. As Rule 901 states, the contents of evidence might satisfy the authentication requirement. TEX.R.EVID. 901(b)(4). The actual sale of the vehicle by Appellant--which is the very subject of the text messages--is an additional circumstance supporting its authentication.

Because we fail to find the trial court abused its discretion in admitting the exhibit, we overrule Issue Three.

## COMMENTS BY THE TRIAL COURT

In his fourth issue, Appellant complains that the trial court *sua sponte* instructed the jury in the guilt-innocence phase about the range of punishment. After the State and defense has presented closing argument, but before they began deliberations, the judge orally instructed the

jury that:

> There's been enough talk about it that I feel I need to tell you what the range of punishment is on this case. It's a Class A misdemeanor. And the punishment is a fine up to $4,000 and/or jail up to one year. That -- I just wanted to put it on the record. You cannot regard that, but there was enough talk about it that, I just wanted to clarify that.

The trial court's reference to the "talk" could only refer to counsel's comments during the trial of the case. Appellant's counsel stated in voir dire that his client was faced with "[u]p to a year in a cage." In closing, Appellant's counsel stated: "Mr. Urrutia is facing a year in jail. I can assure you this is not a game to him." He later argued: "And it's wrong that this man, who is the real one that thinks this is all a game and that my client doesn't have a year in a cage on the line, has put everyone through this." These closing comments were in response to the prosecutor's statement that "[t]he defense would like for you to know or think this is a game, that the victim and the defendant were playing hot potato with this car." The State's attorney made no objection to the Appellant's statements, and Appellant lodged no contemporaneous objection to the trial court's additional oral instruction to the jury.

On appeal, Appellant now claims that the additional oral instruction was a comment on the weight of the evidence and was a direct response to Appellant's jury argument. As such, Appellant specifically claims the comment violates TEX. CODE CRIM. PROC. ANN. arts. 38.05, 36.14, and 36.27. He also asserts the comments violate his rights to due process under the Texas and Federal Constitutions.

### Preservation of Statutory Claims

As we note, no contemporaneous objection was lodged when the trial court made the complained of statement. "As a prerequisite to presenting a complaint for appellate review, the record must show" that "the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial

17

court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context[.]" TEX.R.APP.P. 33.1(a)(1)(A). The "traditional and preferred procedure" for preservation of error regarding improper comments by the trial court includes: (1) objecting; (2) requesting an instruction to disregard if the prejudicial event has occurred; and (3) moving for a mistrial if a party thinks an instruction to disregard was not sufficient. *Unkart v. State*, 400 S.W.3d 94, 98-99 (Tex.Crim.App. 2013). Error preservation is an issue that we have an independent duty to raise. *Darcy v. State*, 488 S.W.3d 325, 328 (Tex.Crim.App. 2016)("[A] first-tier appellate court may not *reverse* a judgment of conviction without first addressing any issue of error preservation. This is true regardless of whether the issue is raised by either of the parties.") [Emphasis in original].

Appellant, however, directs us to *Blue v. State*, 41 S.W.3d 129, 131-32 (Tex.Crim.App. 2000)(plurality op.). In *Blue*, the trial judge apologized to the jurors about the delay in the case, telling them the defendant was still deciding whether to accept the State's offer or go to trial. The trial judge then told the jurors that he would "prefer the defendant to plead" because it would give him "more time to get things done." *Id.* at 130. A plurality of the Court of Criminal Appeals decided the judge's remarks vitiated the defendant's presumption of innocence and were fundamental error of constitutional dimension that required no objection. *Id.* at 131-32. But because no clear rationale for the *Blue* decision can be divined from its several opinions, the Texas Court of Criminal Appeals has subsequently written that "the *Blue* decision has no precedential value" but the opinions "may nevertheless be considered for any persuasive value they might have[.]" *Unkart*, 400 S.W.3d at 101.

The Texas Court of Criminal Appeals latest word on preservation for claimed errant comments by a trial judge is found in *Proenza v. State*, 541 S.W.3d 786 (Tex.Crim.App. 2017).

18

Factually, the trial judge in *Proenza* took over the questioning of an expert witness and through the questioning, arguably indicated the judge's views on the merits the defense case. *Id.* at 789-90. No timely objection was made. *Id.* The court of appeals, partially relying on *Blue*, reasoned the trial judge's action constituted fundamental error because the conduct was sufficiently egregious so as to deem the judge biased as matter of law. *Proenza v. State*, 471 S.W.3d 35, 51 (Tex.App.--Corpus Christi 2015), *aff'd in part and remanded*, 541 S.W.3d 786 (Tex.Crim.App. 2017).

The Texas Court of Criminal Appeals, however, concluded that Texas no longer follows a common law fundamental error doctrine. 541 S.W.3d at 793. Instead, it analyzed preservation under the three-tier system developed in *Marin v. State*, 851 S.W.2d 275 (Tex.Crim.App. 1993), *overruled on other grounds*, *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App. 1997). *Marin* identifies three types of rules: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request. *Id.* at 279-80. Of these three categories, only the first two categories--absolute requirements and prohibitions, and violations of rights that are waivable only--enable the appellate court to hear a complaint without a proper trial objection. *Aldrich v. State*, 104 S.W.3d 890, 895 (Tex.Crim.App. 2003).

Applying this framework to the case before it, the *Proenza* court decided that a trial judge's comments which raised a question of partiality were at least category two *Marin* rights that could be forfeited only through an express waiver. 541 S.W.3d at 797. It reached that conclusion because the source of the right--Article 38.05--imposes an affirmative obligation on a judge independent of a litigant's duty to request relief. Appellant here also relies in part on Article 38.05 that states:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. ANN. art. 38.05. Appellant also relies on Article 36.14 that requires the trial court to give a written jury charge "setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." TEX. CODE CRIM. PROC. ANN. art. 36.14. Given these mandatory statutes, we can look past the absence of an objection here and reach the merits of the statutory claims.

### No Violation of Articles 38.05 or 36.14[4]

The *Proenza* court also noted that not "every unscripted judicial comment in fact disrupts the proper functioning of the judicial system[.]" 541 S.W.3d at 800. If an appeal challenges a trial court's comment that is "errorless or insignificant in the context of a particular trial," then that complaint can be "denied on its merits or else declared harmless[.]" *Id*. That is the conclusion we reach in this case.

The first part of Article 38.05 literally addresses statements that might be made while "ruling upon the admissibility of evidence[.]" TEX. CODE CRIM. PROC. ANN. art. 38.05. That portion of the rule would not apply here because the comment complained of was made well after all the evidence was admitted. Article 36.14, however, similarly prevents a trial court from "expressing any opinion as to the weight of the evidence" in the jury charge. TEX. CODE CRIM. PROC. ANN. art. 36.14. And while the trial judge's comment here did not directly address the

---

[4] Appellant also relies on Article 36.27, but that provision deals only with jury communications with the court and the court's response to those questions. TEX. CODE CRIM. PROC. ANN. art. 36.27. The instruction here was given before the jury began its deliberations and was not in response to any jury question, so Article 36.27 could have no application to this case.

evidence--because no evidence about the possible sentence was ever introduced--some cases have more broadly viewed the concept. They have held that a trial court improperly comments on the weight of the evidence if it makes a statement that (1) implies approval of the State's argument, (2) that indicates any disbelief in the defense's position, or (3) that diminishes the credibility of the defense's approach to its case. *See e.g.*, *Morgan v. State*, 365 S.W.3d 706, 710 (Tex.App.--Texarkana 2012, no pet.); *Clark v. State*, 878 S.W.2d 224, 226 (Tex.App.--Dallas 1994, no pet.). These standards are similar to the last part of Article 38.05 that provides that a trial judge should not "at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." TEX.CODE CRIM.PROC.ANN. art. 38.05. It is against these standards that we review the trial court's comment.

Much of what the trial court said can easily be discounted. The judge affirmed that the range of punishment--as Appellant represented--included up to a year of jail, and she added that it could also result in a fine. Her statement was correct and in fact buttressed what the defense had asserted in its closing. The only way her statement could be seen as undermining the defense is that the trial judge added that "You cannot regard that[.]" In other words, she re-informed the jury that they could not consider the potential range of punishment in deciding guilt or innocence. We say re-inform, because the written charge had already included this instruction: "In deliberating on this case you are not to refer to or discuss any matter or issue not in evidence before you; and in determining the guilt or innocence of the defendant, you shall not discuss or consider the punishment, if any, which may be assessed against the defendant in the event he is found guilty."

The comment at most reminded the jury they could not decide the case on an improper basis. And because Appellant's comments were responsive to what the State had raised, the jury would not necessarily conclude the trial judge was undermining one side or the other. Nor did the

21

comment address anything but a peripheral argument from the closings. The majority of Appellant's theory was that Zain had exaggerated or fabricated his version of events to cover a poor investment, and that his story was not supported by the documentary evidence admitted at trial. The statements about any possible punishment garnered only the two sentences in Appellant's closing that we set out above. Accordingly, we conclude the statement did not reflect the trial court's opinion of the case, nor meet any of the standards for improper comments by a trial judge on the evidence. Rather, it was a neutral (and correct) statement of the law and was joined with another correct instruction: that the jury should not consider the range of punishment in the guilt innocence phase of the trial. *Cf. Morgan v. State*, 365 S.W.3d 706, 711 (Tex.App.-- Texarkana 2012, no pet.)("The comment was neutral, was a substantially correct statement of the law, and explained that while competency to testify was an issue for the court, it also emphasized to the jury that credibility decisions were the province of the jury.").[5]

When addressing the correct harm standard for an Article 38.05 claim, the *Proenza* court repeated its maxim that "when only a statutory violation is claimed, the error must be treated as non-constitutional for the purpose of conducting a harm analysis." 541 S.W.3d at 801, *quoting Gray v. State*, 159 S.W.3d 95, 98 (Tex.Crim.App. 2005). And under Rule 44.2(b), the non-constitutional standard for reversible error in criminal cases requires that "[a]ny other [non-constitutional] error, defect, irregularity, or variance that does not affect substantial rights must be

---

[5] Appellant string cites a number of cases for the proposition that the Code of Criminal Procedure prevents *sua sponte* oral jury instructions or comments to the jury in response to an accused's closing argument. We have reviewed those cases and find them inapposite. They deal with either egregious comments such as in *Blue*, or statements that introduced factual, legal, or procedural matters not otherwise known to the jury. *See e.g. Clark v. State*, 878 S.W.2d 224, 226 (Tex.App.--Dallas 1994, no pet.)(informing panel of two prior felonies committed by accused); *Jones v. State*, 788 S.W.2d 834, 835 (Tex.App.--Dallas 1990, no pet.)(telling jury about punishment phase of trial as if it were a given while the jury was still deliberating guilt-innocence); *Brooks v. State*, 967 S.W.2d 946, 950 (Tex.App.--Austin 1998, no pet.)(supplemental instruction contained incorrect statement of law on the very point the jury was hung-up on).

22

disregarded." TEX.R.APP.P. 44.2(b). Thus, even if we were wrong on the statutory violation, we would have concluded the statement does not present reversible error. For much the same reasons we express above, a review of the entire record shows a single comment by the trial judge addressed on a peripheral issue, and one the jury should not have considered in any event. Because the issue arose based on statements from both the State and Appellant, the jury would not necessarily attribute the judge's statement as a rebuke of only the defense, and in fact, the statement affirmed what the defense had said about the range of punishment. Any error was harmless.

## Constitutional Claims are Forfeited

Appellant also raises constitutional claims based on the same comment, alleging violations of due process of law under the 5th and 14th Amendments to the Federal Constitution and under Article I of the Texas Constitution. His brief on appeal largely focuses on the statutory claim and addresses the constitutional claim only in a single paragraph. Other than repeating his claim that the trial court violated his constitutional rights, and referring us to two cases for the uncontroversial proposition that a trial judge should not act as an advocate,[6] Appellant's argument fails to: (1) address the relevant test for any federal or state due process claims, or differentiate between the two; (2) explain how the judge's single comment meets the relevant test; or (3) show how the harm standard under TEX.R.APP.P. 44.2(a) has been met.

The Court of Criminal Appeals has emphasized that an appellate court has no obligation to construct and compose issues, facts, and arguments for an appellant. *Lucio v. State*, 351 S.W.3d 878, 896-97 (Tex.Crim.App. 2011)(holding that appellant's point of error, which contained no argument or citation to any authority that might support argument, was inadequately briefed and

---

[6] *Connally v. Georgia*, 429 U.S. 245 (1977)(holding that Georgia scheme that paid magistrate judges based on the issuance, but not the declination of search warrants, violated due process); *Tumey v Ohio*, 273 U.S. 510 (1927)(holding that trials conducted by town Mayor, who financially benefited from convictions and payment of fines, violates due process).

23

presented nothing for review "as this Court is under no obligation to make appellant's arguments for her"); *Busby v. State*, 253 S.W.3d 661, 673 (Tex.Crim.App. 2008)(same). Rule 38.1 requires a brief to "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record" in the body of the brief. TEX.R.APP.P. 38.1(i). Conclusory statements do not comply with the briefing rules or preserve a complaint for appellate review. S*ee, e.g.*, *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex.Crim.App. 1996)(holding that point of error was inadequately briefed where appellant "simply declare[d] that his right to counsel was violated, and present[ed] no argument or authority for this contention"). To the extent that the constitutional claim would be evaluated any differently than Appellant's statutory claim, we decline to reach the issue based on the briefing.

In conclusion, we overrule Issues One, Two, Three, and Four and affirm the conviction below.

ANN CRAWFORD McCLURE, Chief Justice (Senior Judge)

November 25, 2019

Before Rodriguez, J., Palafox, J., and McClure, C.J. (Senior Judge)
McClure, C.J. (Senior Judge), sitting by assignment

(Do Not Publish)

24